F. E. PERRY, Appellee, v. CLARKE COUNTY, Appellant.

Bridges: CROSSING WITH ENGINE: USE OF PLANK: CONFLICT IN
1 EVIDENCE. In a suit for injuries sustained by the breaking of
a highway bridge while crossing the same with a threshing
engine, where the evidence is in dispute as to whether the
wheels of the engine were upon running plank as required by
statute, the question presented is for the jury to determine.

Evidence; CONCLUSION OF WITNESS. In an action for injuries
2 sustained while crossing a bridge, a witness should not be
permitted to state as a conclusion whether there was another
crossing plaintiff might have gone over "without any
trouble," and such testimony is also improper where there is
no showing that the same is a public way or known to plaintiff.

Contributory Negligence. The fact that plaintiff examined the
3 bridge and assisted in making some repairs before crossing, or
that he rode the engine while crossing, did not, as a matter
of law, render him guilty of contributory negligence, where
the real defect was not apparent.

Defective Bridge: WANT OF NOTICE: NEGLIGENCE. When a bridge
4 maintained by a county becomes weakened and dangerous from
natural decay, which the exercise of reasonable care would
have revealed, the county cannot rely upon want of notice to
relieve it from liability for injury.

Notice of Injury: SUFFICIENCY OF. In an action for injuries from
5 a defective bridge, it is only necessary for the plaintiff to file
with the county auditor a notice in substantial compliance
with Code, section 3447, giving the time, place and circum-
stances of the injury in reasonably specific terms, to entitle
him to bring his action after the expiration of ninety days
from the date of the injury.

*Appeal from Union District Court.*—HON. H. M. TOWNER,
Judge.

FRIDAY, APRIL 10, 1903.

ACTION at law to recover damages for personal injury.
Verdict and judgment for plaintiff, and defendant ap-
peals.—*Affirmed.*

*W. S. Hedrick* for appellant.

*J. S. Banker, Sullivan & Sullivan* and *Stivers & Slaymaker* for appellee.

WEAVER, J.—On the 22d of October, 1900, the plaintiff was moving a traction engine along a public highway in Clarke County, and, while crossing a county bridge upon the line of his travel, said structure gave way, precipitating the plaintiff and engine into the gorge below. In the fall the plaintiff was pinioned beneath some portion of the engine, from which position he was not rescued for several hours, resulting in very severe physical injuries, and much pain and suffering, for which he seeks to recover damages.  He alleges that the bridge was old, decayed, weakened, and unsafe for public use, of which condition the county had notice, but failed to use reasonable diligence to remedy the defect, and that by reason of such negligence the accident occurred, without contributory negligence on his part.  The defendant denies the plaintiff's claim, and further alleges that the injury to plaintiff occurred more than three months prior to the commencement of this suit, and that no written notice specifying the time, place, and circumstances of the accident was served upon the defendant within sixty days from the date thereof as provided by law. . It also avers that plaintiff, by his negligence, contributed to the injury of which he complains.

The evidence was such the jury would be justified in finding that the bridge had been built about the year 1884, with some repairs in 1895; that its parts were weakened by natural decay; and that plaintiff, being in the service of one Zink, the owner of a steam threshing outfit, approached the bridge with the engine from the east on the morning of the day of the accident.   Before attempting

to cross, the engine was stopped, and plaintiff and Zink went forward to examine the bridge. They concluded that the floor was too badly worn to be safe. At this time a member of the defendant's board of supervisors happened to arrive, and, on being asked, responded that he "thought the bridge safe, as it had just been repaired." He proposed, however, to furnish some new plank if Zink would lay them; and, this proposition being accepted, the most of the day was consumed in obtaining the material and making this repair. Some examination was also made of the stringers. When the new plank were laid, plaintiff and Zink, having four sound plank, such as the statute provides shall be used in moving an engine across a bridge, laid them lengthwise upon the west end or bent of the bridge, properly gauged to carry the wheels of the engine, and for the rest of the distance used for this purpose the old plank taken from the bridge, and laid double. Plaintiff then mounted the engine, and moved slowly upon the bridge. He passed safely over until upon the west or last bent, and was on the new plank, when the supporting stringers gave way. There is evidence on the part of defendant tending to show that the engine wheels did not follow the extra plank laid for their accommodation, thus subjecting the bridge to a greater strain than would otherwise have been produced; but this was a matter of dispute in the testimony, which was properly submitted to the jury. It appeared, or at least there was some evidence, that the stringers gave way at the west end, where they lay upon the sill, and were more or less covered and obscured by the earth approach; one witness saying that "the joists at the west end, where they rested on the cap, were almost rotted in two," but that, owing to the dirt, this condition would not be noticed by looking at them from the outside.

I. The first point made by the appellant is that at the time of the accident the wheels of the engine were

not upon the running boards, as required by the statute
1. Use of plank: which permits the use of public bridges by
conflict in
evidence.   traction engines.   Code, section 1571.   If the
fact relied upon by the appellant were conceded or shown
without dispute, the conclusion for which it contends could
not well be avoided; but, as we have already said, while
there was evidence in support of defendant's claim in this
respect, there was other evidence, both direct and circum-
stantial, to justify the opposite conclusion.   The question
as thus presented was guarded by an appropriate instruc-
tion, and properly submitted to the jury.

II.   Error is assigned upon the ruling of the court in
excluding certain testimony.   One of defendant's witnesses
was asked: "Now, Mr. Stalker, tell the jury whether or
2. Evidence:   not there was a crossing—a way they might
conclusion of
witness.   have gone either above or below the bridge
without any trouble?"   An objection to this as immater-
ial and incompetent was sustained; the trial judge sug-
gesting that, to render such proof admissible, the fact
should have been pleaded.   Without deciding whether the
reason assigned for the ruling is or is not sound, we think
there was no error in excluding the answer to this and
other questions of like import.   The inquiry does not ask
simply as to the existence of another route between the
same points, or for its description, but further calls for
the opinion of the witness whether it was one the plain-
tiff "could have used without any trouble."   If the fact
of the existence of another route was competent at all, it
was for the jury, and not the witness, to say whether it
was such a one as the plaintiff could have used without
unreasonable trouble or delay.   Moreover, there was no
offer to prove that such other way was a public way, or was
pointed out or was known to the plaintiff or to his employer.

III.   It is said the plaintiff is shown to have been
guilty of negligence, because, as is alleged, he knew the

unsafe condition of the bridge. It is true, he examined
3. CONTRIBU- and assisted in replanking it before attempt-
TORY negli-
gence.      ing to cross. This fact, instead of showing
negligence, as a matter of law, tends to sustain his claim
that he was exercising prudence and care. It may be
admitted, of course, that if the defective or rotten con-
dition of the bridge was so plain to casual observation that
such examination as he gave it ought to have revealed the
defect, and to have warned him against risking the pas-
sage, then he was negligent, and should not recover, but
whether such condition did exist was for the jury to
determine. It is further urged that he was negligent in
riding the engine across the bridge. It appeared from the
testimony of some of the witnesses that an engineer may
dismount from his engine and send it across a bridge alone,
but there was no such showing as would render it proper
for the court to say that a failure to pursue such course
was negligence. Indeed, to the uninitiated, it would
seem that to send an engine across a bridge alone, expect-
ing it to guide itself along the running boards which the
statute requires to be used, would be taking chances sav-
oring of rashness. We are clear that there was no error in
permitting the jury to say whether the conduct of plaintiff
in this respect was that of a reasonably prudent engineer.

IV. The question of notice to the county of the
condition of the bridge was also one of fact. The bridge
was made of pine lumber and plank, and had been built
4. DEFECTIVE  about sixteen years at the time of the acci-
bridge: want
of notice:   dent, though it had been repaired and in some
negligence.  part rebuilt in 1895. It is a matter of com-
mon knowledge that such materials, when exposed to the
weather, and especially where they come in contact with
the moist earth, decay with considerable rapidity; and
the law charges the party having a a public bridge of that
kind in its care with the duty not only of making the
structure reasonably safe originally, but also with the

duty of reasonable inspection of the same from time to time
as it advances in age and presumable deterioration.    If a
bridge stands for such a length of time that the natural
processes of decay have weakened it to the point of
danger, and the exercise of reasonable care in oversight
and inspection would have revealed such condition to the
proper officers, the county cannot rely upon the want of
notice as excusing it from the charge of negligence.   It is
held to have notice of whatever defects which reasonable
diligence in the discharge of its duties would have brought
to its attention.  *Huff & Buck v. Poweshiek Co.*, 60 Iowa,
529; *Padelford v. Eagle Grove*, 117 Iowa, 616.   This is, in
effect, the rule applied by the trial court, and we think it
right, both upon principle and authority.

V.    It will be observed that the accident occurred
upon  October 22d, and suit was brought January 30th
thereafter—a period of more than three months.   Under
5.  Notice of in-  our statute, three months' delay in bringing
jury: suffici-
ency of.       suit will bar the action, "unless written notice
specifying the time, place and circumstances of the injury
shall have been served upon the county within sixty days
from the happening of the injury."    Code, section 3447.
It is denied that such notice was served.    It is shown, how-
ever, without controversy, that on December 17, 1900, and
within less than sixty days from the happening of the
accident, a written claim or petition was filed with the
county auditor, and directed to the board of supervisors of
Clarke county, in the following words:

"Osceola, Iowa, December 17, 1900.

"To Board of Supervisors of Clarke County, in Ac-
count with F. E. Perry, Dr.:   To personal injuries caused
by defective bridge, about one-fourth mile West of J. W.
Miller's home, in Ward Township, Clarke county, Iowa.

"Your petitioner further states that on the 22nd day
of October, 1900, while crossing said bridge with a thresh-
ing machine engine, that said bridge gave way, and that

he was carried to the bottom of the creek with said engine, landing on his legs, and other parts of his person, causing permanent injury.

"Therefore, I ask that said county pay me for said injury the sum of fifteen ($15,000) thousand dollars.

"I swear that, to the best of my knowledge and belief, the above account is just and true and wholly unpaid, except some expenses unknown to this agent.

"[Signed]                    C. E. Thompson, Agent.

"Subscribed and sworn to before me December 17, 1900.

"[Signed]                    Edgar Bell, Auditor."

We see no good reason for saying this paper does not fill the demand of the statute for a written notice. It is not entirely formal, perhaps, but the substance is there. It gives notice of the accident, and of the time, place, and circumstances, in reasonably specific terms, and was received and filed in time by the officer upon whom notice could properly be served. To hold that this is not a substantial compliance with the statutory requirement would be excessively technical, and serve no just purpose. The fact that the paper is called a "petition," instead of "notice," is immaterial. It is the effect of its contents, and not its name, by which we are to be governed in its application. Neither is it material that the paper is verified by the affidavit of an agent. The statute does not require the notice to be sworn to, and, if verification is necessary, there is no reason why it may not be made by any person knowing the facts.

We find no reversible error in the record, and the judgment below is AFFIRMED.