ELMIRA M. SEIFERT AND ANOTHER v.
CITY OF MINNEAPOLIS.

213 N. W. 2d 605.

November 23, 1973—No. 43860.

*Castor, Stich & Ditzler* and *John E. Castor,* for appellants.

*Keith M. Stidd,* City Attorney, and *Raymond H. Hegna,* Assistant City Attorney, for respondent.

*Louis W. Claeson, Jr.,* for League of Minnesota Municipalities, amicus curiae.

ROGOSHESKE, JUSTICE.

This is an action to recover damages resulting from a fall caused by a defective public sidewalk in the city of Minneapolis. The court, pursuant to a special verdict, awarded plaintiff Elmira M. Seifert damages of $7,200 and plaintiff Edward P. Seifert, her husband, $704.80 for loss of consortium. Upon posttrial motion for judgment notwithstanding the verdict, the trial court reluctantly determined the service of notice of tort claim insufficient in view of past decisions of this court and denied recovery to both plaintiffs. The dispositive issue presented is whether the manner of service of the notice of claim upon a member of the city council complied with Minn. St. 466.05, subd. 1, which in material part provides:

"Every person who claims damages from any municipality for or on account of any loss or injury within the scope of section 466.02 shall cause to be presented to the governing body of the municipality within 30 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded."

Because we believe the purpose underlying our notice-of-tort-claim statute is achieved once notice reaches a member of the city council, or any other responsible official reasonably likely to place the notice before the governing body of the municipality at its next meeting, we hold plaintiffs' manner of service consistent with the requirements of § 466.05, subd. 1. In accordance with the urging of the trial court, we therefore reverse the posttrial order and reinstate the judgment.

The facts are not in dispute. On November 20, 1968, Elmira Seifert, aged 74, was injured as a result of a fall on a public side-

walk in the downtown area of Minneapolis. At 6 p. m. on Friday, December 20, 1968, 30 days after the injury occurred, a copy of a notice of a tort claim for damages was personally served upon Alderman Dan Cohen, a member of the city council then serving as its president, at his home in South Minneapolis.[1] Additional copies of the notice of claim were also left at the city clerk's office and the city attorney's office on Monday, December 23, 1968. On the following day the secretary for plaintiffs' attorney left at the city clerk's office another copy of the notice of claim, to which was attached an affidavit of plaintiffs' attorney setting forth the service of the notice on Alderman Cohen. Although the copy of the notice left with Alderman Cohen cannot be located, the record is clear that the claim was presented and processed by the city council as though it had been filed December 20, 1968.

Prior to trial, defendant city moved for summary judgment based upon plaintiffs' alleged failure to comply with the provisions of § 466.05, subd. 1. The trial court, in the exercise of exemplary judicial discretion, reserved judgment on this issue until after trial to ensure the aged plaintiffs' presence at a trial on the merits and to protect their rights against a potential third party.

The principal purpose of our notice-of-tort-claim statute, as set forth in Hirth v. Village of Long Prairie, 274 Minn. 76, 79, 143 N. W. 2d 205, 207 (1966), is—

"* * * to protect against dissipation of public funds by requiring that the municipality be promptly furnished with information concerning a claim against it so that full opportunity is provided to investigate it, to settle those of merit without litigation, and to correct any deficiency in municipal functions re-

---

[1] Although counsel for plaintiffs was retained December 13, 1968, the record indicates that it was through mere inadvertence that service of the tort claim notice was not made upon the city clerk before the thirtieth day. When such inadvertence was discovered, the city clerk's office had already closed on Friday, December 20, 1968, and plaintiffs thereupon chose to serve a member of the council.

vealed by the occurrence. By timely service of notice, the municipality is also afforded protection against stale or fraudulent claims or the connivance of corrupt employees or officials."

It is the contention of defendant city (with which amicus curiae agrees) that service of notice upon a member of the city council has been held insufficient by our prior decisions, particularly Aronson v. City of St. Paul, 193 Minn. 34, 257 N. W. 662 (1934).

The language of § 466.05 and of our early decisions construing the statutes from which it evolved[2] does not explicitly prescribe a single or exclusive manner of service.[3] Illustrative of this is

[2] L. 1897, c. 248, § 1, provided in part: "Before any city, village or borough in this state shall be liable to any person for damages for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect in any bridge, street, road, sidewalk, park, public ground, ferry boat, or public works of any kind in said city, village or borough, or by reason of any alleged negligence of any officer, agent, servant or employe of said city, village or borough, the person so alleged to be injured, or some one in his behalf, shall give to the city or village council, or trustees or other governing body of such city, village or borough, within thirty days after the alleged injury, notice thereof * * *."

That statute was subsequently superseded by L. 1913, c. 391, § 1, G. S. 1913, § 1786, which employed substantially the language of our present statute with respect to the notice requirement and provided in part: "Every person who claims damages from any city, village or borough for or on account of any loss or injury sustained by reason of any defect in any bridge, street, sidewalk, road, park, ferry-boat, public works or any grounds or places whatsoever, or by reason of the negligence of any of its officers, agents, servants or employees, shall cause to be presented to the common council or other governing body, within thirty days after the alleged loss or injury, a written notice, stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded."

[3] See, Aronson v. City of St. Paul, 193 Minn. 34, 257 N. W. 662 (1934); Lyons v. City of Red Wing, 76 Minn. 20, 78 N. W. 868 (1899); Roberts v. Village of St. James, 76 Minn. 456, 79 N. W. 519 (1899); Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029 (1898).

the trilogy of Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029 (1898); Lyons v. City of Red Wing, 76 Minn. 20, 78 N. W. 868 (1899); Roberts v. Village of St. James, 76 Minn. 456, 79 N. W. 519 (1899).

In Doyle, service of the notice had been made upon the mayor of the city of Duluth. The trial court granted defendant's motion for dismissal on the ground that the complaint contained no allegation that notice of claim had been properly served upon the governing body of the city. In affirming the trial court's order, this court stated (74 Minn. 161, 76 N. W. 1030):

"The objection to the complaint having been first raised on the trial, it ought not to be sustained if, by any reasonable intendment, the complaint can be held to allege the necessary facts. But the difficulty is that the complaint alleges just what was done as to giving the notice. It was given to the mayor, and by no fair inference can we construe the complaint as alleging or even suggesting as a conclusion of law that notice was given to the city council."

Still the court indicated that no single or exclusive rule would be established regarding the proper manner of service (74 Minn. 161, 76 N. W. 1030):

"How the notice shall be given to such body the statute does not say, but it is certain that notice given to the mayor is not notice given to the council. There is, however, no practical difficulty in giving notice to the council. It may be directed to the council, and left with the clerk or officer who has charge of the records and files of the council, with a request annexed that it be laid before the council at its next meeting. This would be the orderly and practical way of giving notice to the council or other governing body. *We are not to be understood as holding that the suggested method is the exclusive one.*" (Italics supplied.)

In Lyons v. City of Red Wing, *supra*, the evidence revealed that plaintiff delivered notice to the city clerk within 30 days of the injury and that the clerk subsequently presented the notice

to the city council. Relying upon the decision in Doyle, we said (76 Minn. 22, 78 N. W. 869):

"* * * It is sufficient if the notice and claim reach the council or governing body of the municipal corporation in due time, although it passes through the hands of others. * * * If the council is not in session when the notice is served, it may be directed to the council, and left with the clerk or other officer who has charge of the records and files of the council, with a request annexed that it be laid before the council at its next meeting. *This, or some similar method, is the only practical way of serving the notice on the council in cases where it is not in session during the 30 days within which the notice must be given.*" (Italics supplied.)

In Roberts v. Village of St. James, *supra*, a case particularly analogous to the present appeal, plaintiff, within the 30-day period, served a copy of her notice of claim upon the village recorder and upon each member of the city council. On the following day, personal service of the original notice was made upon the president of the council, who thereafter sent it to the recorder. Without reaching the issue of whether service upon a member of the council was sufficient, the court considered only whether service upon the president, who in turn delivered the notice to the village recorder, complied with L. 1897, c. 248.[4] In upholding this manner of service, the court reiterated what had been suggested in Doyle and Lyons, saying (76 Minn. 457, 79 N. W. 520):

"How the notice of injury must be given and claim for compensation presented to the council or other governing body of the municipality the statute does not direct. *It must be done in some practical and effective way, and in determining the sufficiency of the method adopted in any particular case technical strictness will not be required; a substantial compliance with the statute is all that is necessary.* In the cases of Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029, and Lyons v. City of Red

---

[4] See, footnote 2, *supra.*

Wing, supra, page 20, we indicated some of the orderly methods for giving the notice of the injury and presenting the claim for compensation to the council. The method suggested for serving the notice when the council was not in session was to direct the notice to the council, and leave it with the clerk or other officer who had charge of the record and files of the council, with a request annexed that it be laid before the council at its next meeting; *but the court did not hold that the suggested method was the exclusive one.*" (Italics supplied.)

It is clear from these cases that even a narrow or technical construction of the statute did not require service upon the clerk as the only proper notice to the governing body. Nevertheless, for reasons not set forth, a majority of this court in Aronson v. City of St. Paul, *supra,* seemed to limit the holdings in Doyle and Lyons by apparently declaring service upon the clerk the exclusive mode for proper service (193 Minn. 36, 257 N. W. 663):

"The question here is whether a notice of claim for injuries against a municipality served upon the mayor thereof and never reaching the city council was sufficient service to satisfy the above quoted statute. That question has been before this court before, and it has been held definitely that service on the mayor of a municipality was not legal service. Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029. *That case and the case of Lyons v. City of Red Wing, 76 Minn. 20, 22, 78 N. W. 868, 869, suggested the manner in which proper and orderly service may be made upon the city council.* 'It may be directed to the council, and left with the clerk or officer who has charge of the records and files of the council, with a request annexed that it be laid before the council at its next meeting.' * * * The statute in question applies to all municipalities of the state. * * * *The rule applied is a salutary one and should be adhered to.*" (Italics supplied.)

A close analysis reveals that the Aronson case, with its harsh implications, may be distinguished from this case and the cases set out above. Unlike the present case, the service in Aronson

was upon the mayor of St. Paul—a person who held the unique position under the then-existing city charter of being both the executive of the city and a member of the legislative body. Service in this case was made upon a member of the council who was elected from one geographic area or ward of the city and whose sole capacity was legislative. Unlike this case and the earlier cases, the notice of tort claim in Aronson was not personally served upon a member of the city council but was served upon the mayor-council member's secretary.[5] Notice in the present case was personally served upon a council member, and none other than the president of the council. The most significant distinguishing feature of the Aronson case is that the notice of tort claim in that case was never presented to the city council. Here, the record clearly shows that the notice of claim was presented and processed by the city council shortly after such notice was personally served upon the council president.

In any case, in keeping with the rationale of Olander v. Sperry & Hutchinson Co. 293 Minn. 162, 197 N. W. 2d 438 (1972), we believe that the purpose of the notice-of-tort-claim statute, "to allow the city to commence investigation to determine the merit of the claim" (293 Minn. 170, 197 N. W. 2d 443), can be adequately preserved if the strict and technical construction of the Aronson case is not pursued, and we reaffirm our earlier decisions that a substantial compliance with the statute is all that is necessary. Accordingly, we hold the purpose of the statute is satisfied once service of the notice is made upon a member of the city council or any other responsible official reasonably likely to place such notice before the governing body at its next meeting. In so far as the Aronson case or any prior decisions of this court are inconsistent with this standard, they are overruled.

We further hold that the service of notice upon Alderman Dan

---

[5] Although the record in Aronson states that notice was served on the mayor-council member's secretary and ultimately passed on to the mayor, it is unclear whether the mayor-council member received such notice within the 30-day period required by statute.

Cohen complied with Minn. St. 466.05, subd. 1. Such service occurred within the required 30-day period, and as a member of the governing body, Alderman Cohen was reasonably likely to place the notice before the council at its next meeting, thus providing the municipality with ample opportunity to investigate plaintiffs' claims.

In addition, the fact that service was made during evening hours cannot be afforded legal significance. To limit the period of service to those business hours within which the city clerk's office remains open is to engraft upon § 466.05, subd. 1, another technical requirement. While language in Peterson v. Village of Cokato, 84 Minn. 205, 87 N. W. 615 (1901), seems adverse to our interpretation, it should be recognized that such language is mere dicta since the issue of service outside of business hours was not squarely before the court on that occasion. We find no justification for reducing the 30-day time period within which a claimant must serve notice upon the governing body by restricting such service to normal business hours. In accord with the urging of the trial court, we reverse the post-trial order and direct reinstatement of the judgment.

Reversed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.