Dan G. MIHALOVICH, Appellant,

v.

APPANOOSE COUNTY, Iowa, Appellee.

No. 56167.

Supreme Court of Iowa.

April 24, 1974.

Milani & Milani, Centerville, for appellant.

Francis J. Mullen, Chariton, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

This is a suit for personal injuries arising from a one vehicle accident caused by a depression in a county road. A nonjury trial resulted in judgment for defendant by reason of a claimed failure to comply with section 613A.5, The Code (60 day notice requirement). The ruling included holdings which would require judgment for plaintiff except for the defense based on plaintiff's claimed failure to give notice.

We affirm in part, reverse in part, and remand for entry of judgment.

From the extensive and careful ruling of the trial court we adopt as our own the following statement of facts:

"In November, 1967, on a north-south secondary road in Appanoose County, Iowa, the defendant installed two metal tubes 300 feet apart in the ordinary manner, tamping bases and fill. For four to six weeks before May 27, 1968, the patrol operator responsible for the district where the installations were made, was assigned to a different area and, during this period, there was neither road grading nor inspection performed by or on behalf of the defendant along the secondary road where the culverts were placed. Neither was the completed installation ever inspected by the County Engineer.

"The plaintiff, then 57 years of age, operating a farm as well as a grain handling business and driving a Ford Cab-over truck pulling a 34 foot grain auger, approached the culvert area from the south at about dusk on May 27, 1968. As he came over the crest of a rise at 40 to 45 miles per hour with lights operating, he observed a depression over the southernmost culvert installation, perhaps 100 feet ahead. He braked gently, braked more strongly when he made closer observation and then struck the depression squarely. He had not traversed the road since the culverts were installed and was not aware of the condition existing. The truck was diverted to the left of its normal path and after traveling diagonally in a northwesterly direction about 125 feet went into the west ditch, turned on its right side and at rest, faced southwest. The auger remained attached and faced northerly on the road surface almost parallel with the truck.

"The plaintiff was rendered unconscious by the impact but following recovery of consciousness, he walked south about a half mile to the Phillips farm house where his wife was called. He was then taken to St. Joseph Mercy Hospital in Centerville where Dr. Anthony S. Owca attended to his lacerations, bruises and dislocated left shoulder.

"The morning following the plaintiff's injury, his son, Daniel, went to the Board of Supervisors' room in the court house in Centerville and orally reported the accident, its time and its circumstances to all three members of the board. He alleged negligence, asked if there was insurance, was told there was such and that he should see Jimmy Harris, who had defendant's insurance. Daniel did so and made a report to Harris on May 28th. The County Engineer and members of the defendant's governing body then went to the accident location on May 28th, made measurements and attended to the levelling of the depression over the south culvert by dumping shale there and compressing it with a grader. The defendant had no actual knowledge of the depression or settling over the south culvert until this date but it had existed a sufficient length of time and was of sufficient depth and appearance that the defendant should have discovered its existence in the exercise of ordinary care and customary patrol operations.

" *   *   *

"Late in June or early in July when the plaintiff was at home following his hospitalization in Centerville, he was interviewed by Mr. Holmes, who said he was an adjuster for Hawkeye Security, having the defendant's insurance. Plaintiff's version of the accident was then recorded and pictures of the truck were taken in plaintiff's presence. Holmes told plaintiff not to do anything until plaintiff heard from his again, that he or some other adjuster would be back in two (or four) weeks after vacation and summer camp and that the plaintiff should not contact anyone meanwhile.

" *   *   *

"On August 28th, following plaintiff's return from Des Moines, he was called by Mr. Holmes with whom he had talked earlier, was asked where he had been and was

told then that no settlement could be made with him as a result of the adjuster's investigation of the facts. The following day, the plaintiff called his lawyer and made an appointment for the next Tuesday. The petition was filed following this conference and original notice was served upon the Appanoose County Auditor on September 4th. Copy of the petition was attached to the notice thus served."

We have omitted the trial court's statement as to the nature of plaintiff's injuries because it is now stipulated his damages were $15,248.65.

I. Plaintiff's first assignment challenges the trial court's interpretation of section 613A.7 (tort liability insurance for governmental subdivisions). The section provides in pertinent part:

" * * * The existence of any insurance which covers in whole or in part any judgment or award which may be rendered in favor of the plaintiff, or lack of any such insurance, shall not be material in the trial of any action brought against the governing body of any municipality, or their officers, employees or agents and any reference to such insurance, or lack of same, shall be grounds for a mistrial."

During trial plaintiff made repeated attempts to introduce evidence of an agency relationship between Jimmy Harris, the insurance agent, and the Appanoose County Board of Supervisors. He also attempted to introduce evidence of the board's reliance on Harris for purposes of receiving notice. The trial court refused to admit the evidence. Plaintiff entered it in the record as an offer of proof. The court refused to consider any of this testimony because it felt prohibited from doing so by reason of section 613A.7 above quoted.

Plaintiff assails this interpretation of the section. He believes the statutory proscription of insurance evidence is a mere codification of our familiar court made rule to the same effect. He argues the rule should be subject to those same

limitations we have developed and recognized in the application of the common law rule. We agree.

The rule was explained in an authority we approved in Stewart v. Hilton, 247 Iowa 988, 998, 77 N.W.2d 637, 643.

"It is clearly the general rule that in a personal injury or death action evidence is inadmissible which informs the jury that the defendant is insured against liability. Such evidence is not only inadmissible because it ordinarily is irrelevant as to any of the issues in the case, but because it tends not only to influence jurors to bring in verdicts against defendants on insufficient evidence, but to bring in verdicts for more than they would if they believed that the defendants themselves would be required to pay them. There are, however, circumstances under which such evidence is admissible. * * *." 4 A.L.R.2d 761, 765. Our cases in accord are legion. See Price v. King, 255 Iowa 314, 122 N.W.2d 318 and authorities. See also 29 Am.Jur. 2d, Evidence, section 405, page 459.

We have held the mention of insurance does not necessarily and in all instances entitle defendant to a mistrial. Stewart v. Hilton, supra; Price v. King, supra.

Chapter 613A, The Code, (tort liability of governmental subdivisions) was enacted by the 62 GA. In waiving governmental immunity in tort the legislature chose to authorize governmental subdivisions to insure the risks affected. This authority is given in section 613A.7. The trial court excluded the evidence because of the sentence quoted at the beginning of this division, believing the language that insurance evidence "shall not be material" and "grounds for a mistrial" required him to do so.

The legislature was acting to expand tort liability into a new area. In doing so it took care to authorize insurance coverage. In connection with that authorization the sentence in question was added. We think it was added to assure the statutory autho-

rization would not work to remove the existing barriers as to such evidence in the field of tort liability they were opening. We believe and hold the sentence in question codified existing law for its application in tort liability for governmental subdivisions.

■ Upon such a holding it becomes clear the evidence offered should have been received. It falls within a recognized exception to the general rule. Evidence of insurance is admissible in certain situations. See 29 Am.Jur.2d, Evidence, section 405, page 459. Included among the exceptions are cases where it is offered to show existence of an agency, where such existence is material and disputed. See Annot., 4 A.L.R.2d 761 at 776.

The evidence offered establishes Harris Insurance Agency as agent to receive notices for defendant. Plaintiff's son reported to defendant board of supervisors the day after the accident. They referred him to Harris. Harris advised the son the accident would be reported and said an adjuster would contact the family. An adjuster did so. Harris also indicated he had made a written report of the accident and circumstances to the company.

In the offer of proof a supervisor indicated claims were customarily referred to Harris and this was why it was done in the instant case. He regarded Harris as the board's agent in such matters. Harris himself acknowledged he advised the board of the report to him. He indicated he made written report of the accident to the company. He considered himself to be defendant's agent.

The offer included plaintiff's testimony regarding an adjuster for defendant's insurer:

"Q. What else did this man say to you? A. He came to the house and sat at the table and made a tape recording, asked me a lot of questions, and then he got ready to leave, he wanted to see the truck and I think that's the first time I had been away from the house, I walked across the street with him and the boy was over there and we unveiled the truck, it had a tarp over it, and he took pictures of the truck. *He made a statement in the house, and he made one across the street, do not see anyone until I come back, I have two weeks of guard duty and I have two weeks vacation and I will either be back or some other representative of our company will be back to contact you.*

"Q. When he told you this, did you believe him? A. Yes, I did.

"Q. And did you rely upon the facts of the statement he told you? A. Yes, I did." (Emphasis added)

On the 90th day following the accident the adjuster advised no settlement could be made. Plaintiff contacted his attorney the following day. Suit was promptly filed.

II. The trial court was required to interpret section 613A.5, The Code. It provides, in pertinent part:

"Every person who claims damages from any [unit of government] for or on account of any wrongful death, loss or injury within the scope of section 613A.2 [governmental liability for tort imposed] shall commence an action therefor within three (3) months, unless said person shall cause to be presented to the governing body of the municipality within sixty (60) days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. * * * *."

It is to be remembered Harris, the agent in this case, wrote down the time, place and circumstances of the accident and advised the defendant board of those facts.

After trial of this case below we filed our opinion in Vermeer v. Sneller, 190 N. W.2d 389 (Iowa 1971). In Vermeer we held substantial compliance with the notice requirement could be accomplished by serving a notice of time, place and circum-

stances of the accident on an agent designated by the governmental subdivision involved. We acknowledged the same principle in Goodwin v. Bloomfield, 203 N.W. 2d 582 (Iowa 1973).

III. Vermeer v. Sneller, supra, was a suit against a school district in which no issue was presented as to the existence of an agency. Appeal was taken from a ruling on a motion so we acepted the existence of the agency as alleged. Here issue is joined on the question and we are accordingly required to consider what is necessary for plaintiff to show its existence.

■ At one time there was a question of whether such a showing could even be undertaken. See Heck v. City of Knoxville, 249 Iowa 602, 612, 88 N.W.2d 58, 64. However Vermeer v. Sneller resolved the question in favor of allowing such a showing. We have noted section 613A.5 authorizes subdivisions of government to insure risks contemplated in the chapter. Inherent in the authorization is the power to deal with the insurance industry and to designate someone in the insurance business to write the risk and to service the policy in the usual manner. Where those responsible for administering the governmental subdivision desire it, we think it is entirely appropriate for them to designate the same person to receive the notices required in 613A.5. Plaintiff claims Harris was so designated in this case and the offered evidence clearly supports the claim.

For such a limited purpose it is unnecessary to satisfy formal requirements which commonly attend a governmental appointment. No governing or public function is involved in the designation. The governmental subdivision acts only to vitalize its statutory power to insure the risk. Authority for such a designation is included in this statutory authorization and no act of government is required beyond placing the business and entrusting such responsibility with the insurance agent. The authority is strengthened by the general powers given supervisors in section 332.3(6), The Code.

■ IV. The trial court made no finding of agency because it held the evidence offered to establish it was inadmissible. We have held the evidence should have been received. Normally a holding excluded evidence should have been admitted requires us to remand the case for retrial, at least on the issue for which such evidence was offered. In an appeal in a law action we sit only as a court of review and make no findings of fact. See 5B C. J.S. Appeal and Error § 1939, pages 475–482, 5 Am.Jur.2d Appeal and Error, section 973, pages 400–401. However where all the facts are clearly established it is appropriate for us to order final judgment even where we find error. Thorp Credit, Inc. v. Barr, 200 N.W.2d 535, 537 and authorities. We must determine whether the fact of agency can be said to be clearly established.

■ We believe the testimony of defendant board members acknowledging Harris to be their agent takes that issue out of the case because it was never contradicted. A special question is presented where as here a party while testifying admits a fact in issue. See McCormick on Evidence, section 266, pages 636–639. Stearns v. Chicago R.I. & P.R. Co., 166 Iowa 566, 578, 148 N.W. 128, 133. Our present question is greatly simplified by the fact defendant offered no further evidence contradicting the testimony admitting the agency. Under these circumstances we believe the record establishes the limited agency. The 60 day notice requirement was satisfied.

■ V. Defendant urges the trial court should be affirmed because it was wrong in failing to find plaintiff was contributorily negligent. The burden of proof on this issue was on defendant. Section 619.7, The Code.

"Generally the question of contributory negligence and proximate cause are for the [finder of fact]; it is only in the exceptional case these issues may be decided as matters of law. Rule 344(f)(10), R.C.P. Even where the facts are not in dispute or

contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f)(17), R.C.P. We have observed that in the absence of an admission by the adverse party, it is not often that a party having the burden of proof upon an issue establishes it as a matter of law. Hedges v. Conder, 166 N.W.2d 844 (Iowa 1969)." Anderson v. Lyon County, 206 N.W.2d 719, 723 (Iowa 1973).

Under the facts as so carefully outlined by the trial court this is not one of the exceptional cases where defendant carried this burden of proof as a matter of law. We hold the trial court was right in all its findings except as we have indicated herein. In all other respects its findings are affirmed.

We think it fair to acknowledge counsel and the trial court, in this exceptionally well tried case, proceeded without benefit of our previously cited later decisions. The judgment of the trial court is

Affirmed in part, reversed in part, and remanded with directions judgment be entered for plaintiff against the defendant in the sum of $15,248.65.