Sylvia COOK, Appellant,

v.

CITY OF COUNCIL BLUFFS, Iowa and Michael Woodbury, Appellees.

No. 60558.

Supreme Court of Iowa.

April 19, 1978.

Spellman, Spellman, Spellman & Spellman, by Martin E. Spellman and G. Michael Kealhofer, Perry, and Riedman & Welsh, Omaha, Neb., for appellant.

Gordon C. Abel, Council Bluffs, for appellees.

UHLENHOPP, Justice.

This appeal involves the sufficiency of a letter as notice under § 613A.5 of the Code of 1975, which provides:

Every person who claims damages from any municipality or any officer, employee, or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 or section 613A.8 or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice.

Plaintiff Sylvia Cook claims that policemen of defendant City of Council Bluffs, including defendant Michael Woodbury, subjected her to mistreatment in the home of her mother and herself on October 17, 1974. She commenced the present damage action more than six months but less than two years thereafter. Hence the viability of her action depends on whether she caused written notice to be given within 60 days. The question is whether a letter written to a Council Bluffs' councilman qualifies as a notice under § 613A.5.

Defendants filed a motion for summary judgment attacking the alleged notice, and the trial court held a hearing, considered the testimony and the material filed by the parties, and sustained the motion. Plaintiff appealed.

I. At the threshold we have a question of our jurisdiction of the appeal. Plaintiff failed to file her notice of appeal with the district court clerk within 30 days. Rules 335, 336, Rules of Civil Procedure (the applicable rules are those which appear in the Code of 1977). Rule 335(a) states in relevant part:

Appeals to the supreme court must be taken within, and not after, thirty days from the entry of the order, judgment or decree . . . .

Rule 336(a) states:

Appeal other than those allowed by order under rule 332 or rule 335 [not involved here] is taken and perfected by filing a notice with the clerk of the court where the order, judgment or decree was entered, signed by the appellant or his attorney. It shall specify the parties taking the appeal, and the decree, judgment, order or part thereof appealed from. The appellant shall serve a copy of the notice on each other party or his counsel in the manner prescribed in rule 82(*b*). The notice presented to the clerk of the trial court for filing shall be accompanied by a proof of service in the form prescribed in rule 82(*g*). Promptly after filing the notice of appeal with the clerk of the trial court the appellant shall mail or deliver to the clerk of the supreme court an informational copy of such notice.

The trial court's order sustaining defendants' motion for summary judgment was made and recorded on March 11, 1977. On April 8, 1977, plaintiff's attorney prepared, dated, and signed a notice of appeal which was directed:

TO: Gordon C. Abel, City of Council Bluffs and Michael Woodbury

Donald J. Diwoky, Clerk of the District Court of Pottawattamie County.

Plaintiff's attorney directed Beth Irene Dowd, a secretary, to mail the original to Donald J. Diwoky, clerk of the district court of Pottawattamie County, with copies to Mr. Gordon C. Abel and the clerk of the supreme court. On the same day, April 8, 1977, the secretary so mailed the notices.

Mr. Abel and the clerk of the supreme court received the notices but the clerk of district court did not.

On April 27, 1977, plaintiff's attorney was advised that the clerk of district court was unable to locate the notice of appeal. On May 2, 1977, he therefore sent the district court clerk a copy of the notice, which the clerk received and placed on file on May 4, 1977.

We ordered that the question of our jurisdiction, which these facts present, be submitted with the appeal.

Involved here is rule 82, R.C.P. That rule states in relevant part:

(a) *When service required.* Everything required by these rules to be filed . . . and every written notice . . . shall be served on each of the parties.

. . .

(b) *Same: How made.* Service upon a party represented by an attorney shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of court. . . . Service by mail is complete upon mailing. . . .

(d) *Filing.* All papers after the petition required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter. Whenever these rules require filing within a certain time said filing shall be deemed timely if service is made within said time and filing is completed within a reasonable time thereafter.

At the time of these events, rules 335 and 336 were part of the rules of civil procedure. Hence rule 82(a) covered notices of appeal and required that such notices be served. Rule 82(b) required service to be

upon the opposing attorney. Timely service was made upon the opposing attorney here and by the approved method, mail.

But rule 336(b) required that the notice also actually be filed with the district court clerk, and rule 82 did not dispense with that requirement. The last sentence of rule 82(d) states however that the filing is timely if (a) the service is timely (as it was here) and (b) the filing is completed within a "reasonable time thereafter." Here a notice was mailed to the clerk on April 8, 1977, but did not reach him. A second notice was thereafter mailed to him, which reached him on May 4, 1977. This latter date was the time that filing was accomplished. Was that filing within a reasonable time after service by mail on opposing counsel?

This court approved the following definition of a "reasonable time" which was offered by counsel in *Williamson Heater Co. v. Whitmer*, 191 Iowa 1115, 1119, 183 N.W. 404, 405: "A 'reasonable time' is defined by counsel for appellee as being 'such time as is necessary, under the circumstances, for a reasonably prudent and diligent man to do conveniently what the contract or duty requires should be done, having regard for the rights, and possibly the loss if any to the other party affected' . . . ."

■ The district court clerk recorded the summary judgment order on March 11, 1977; hence the regular 30-day period for appeal expired April 10, 1977. Plaintiff's attorney served the notice by mail on April 8, 1977, but he did not until May 2, 1977, mail a notice to the district court clerk which actually got to that clerk. That notice arrived on May 4, 1977, some 26 days after the attorney served the notice by mail on opposing counsel. If this were all of the facts we would not hesitate to say the filing was not accomplished within a reasonable time after serving. The requirements of rules 335 and 336 are jurisdictional and compliance is essential. *Lundberg v. Lundberg*, 169 N.W.2d 815 (Iowa); *Zick v. Haugh*, 165 N.W.2d 836 (Iowa); *Brooks v. Engel*, 159 N.W.2d 438 (Iowa).

But we must consider two additional factors. One is that plaintiff's attorney did not wait until May 2, 1977, to mail the notice to the district court clerk; his secretary mailed it at the same time she served defendants' attorney by mail on April 8, 1977. We have no hesitation in saying that had this mailing to the district court clerk been delivered in usual course of the mail the filing would have been done within a reasonable time after the serving, even if the notice had not been received by the clerk precisely by April 10, 1977.

But the notice mailed to the clerk went awry. On April 27, 1977, plaintiff's attorney learned of the situation, on May 2, 1977, he mailed another notice to the clerk, and on May 4, 1977, the clerk received it.

■ Then the second factor comes into play, the word "reasonable." In promulgating rule 82(d) this court did not state that the filing had to be done within a specified number of days after serving. Such requirements cause cases to go out on the procedural point if a misstep occurs by as little as a day. *Zick v. Haugh*, supra. Instead, this court provided some flexibility: filing must be completed within "a reasonable time" after serving. "Reasonable" allows consideration of all the existing circumstances. *Williamson Heater Co. v. Whitmer*, supra.

■ Although the question is close and the case is near the line, under the circumstances here—the mailing of the notice to the district court clerk at the same time as the service, the further mailing to the district court clerk after plaintiff's attorney learned that the first notice could not be found, and the receiving of the notice by the clerk 26 days after the serving—we hold that plaintiff accomplished the filing of the notice within a "reasonable" time after serving. In so holding we believe we are ameliorating some of the rigors of the inflexible 30-day requirement at which rule 82(d) was aimed.

We note that a contrary result would be required under the language of present rules 5 and 6 of the Rules of Appellate Procedure.

We have jurisdiction of the appeal.

II. We come then to the merits of the appeal. Plaintiff, her husband, her mother, and her brother lived in a mobile home. Plaintiff's husband lost his job on October 14, 1974, and did not come home until the evening of October 17, 1974. He then came to get his clothes, and arrived with his brother. Perhaps the events from then on can best be related by setting forth a letter which plaintiff and her mother together composed, and her mother signed. Plaintiff's mother, Bernadine Stark, was the original scrivener, but her writing was so poor that plaintiff hand-printed the letter which was actually mailed. The letter was mailed on October 24, 1974, addressed to Ronald E. Cleveland as councilman of the City of Council Bluffs. It stated:

Co. Bluffs, Ia.
Oct. 24, 1974

Mr. Cleveland;

I am Bernadine Stark the lady that called about my daughter Sylvia Cook. The event that took place was on the nite of Oct 17th about 9:45 p. m. My daughter & I was watching the world series in our own home. Her Ex-husband Craig D. Cook and his brother Mark Cook opens my front door and walks in on us without knocking or letting us know of there presents. Her husband had been gone for 4 days not Letting her know where he was. He had done this to her before when he went AWOL from the Army 2 yrs ago in March from Ft. Rucker, Ala. So she has always had to make her home with me. He walks through my home into the bedroom and starts beating on her by hitting her in the stomach. I tried to stop him but couldn't, so I came to the living room and called the police for help. When they arrived I Let 2 policemen in. One by the of White & the other I do not know his name. I then shut the door and took them to the bedroom to stop the ex-husband & get him & his brother out of my home. White asked me to go back into the living room, in which I did. When I came out it looked as if the whole police force of Council Bluffs had come out of my walls, how they got in I do not know that except they opened my door on their own & walked in. There were seven police in my mobile home. In the mean time White rushed over to my phone & was using it without my consent. About that time my daughters ex-brotherinlaw, sneaked back in the bedroom and starts carring some of sons clothes out. My daughter jumped up on the davenport & told him to put them down they belonged to her brother. White asked me to turn the T.V. off, which I did. Then he turned and said to my daughter your under arrest, Woodbury grabbed her and brutally threw her on the floor & put the handcuffs on her, with his knee in her back holding her down. They had the handcuffs on crooked to where they were cutting her arms. I turned and said "Please, undo the handcuffs & let her up, as we think she is pregnant. White said "I don't give a dam if she is & if you don't keep still I'll put you under arrest to." I had no say what so ever in my own home. When they took her out on a cold night she had only a white T-shirt on, no bra, a pair of jeans & bear footed. No coat.

I actually didn't know what had happened in my and her home & neither did the neighbors by arresting her. I should have been the one to have the right to of made the complaint to whom should be arrested—not the police as they were called to take the ex-husband and brotherinlaw out. After they took her they turned to the ex-husband & brotherinlaw & said "I suggest you get out of town." & Let them go.

I dressed and went to the police station, when I walked in a girl came to the window & I asked about my daughter Sylvia Cook. She said "$106.00 fine and showed me the arrest sheet for "Disturbing the peace by holloring." I asked to see the Lieutenant that was on duty. I went in & explained the situation to him how all this happened, so he calls in Woodbury that had came back to my door & told me & also her in the police car later that he could but wasn't going put her down for resisting arrest, because she was upset. Woodbury turns to me in front of the Lieutenant because I made the statement that if she was preg-

nant that I could sue the police force & the City if something happened to her over the brutal treatment. Walks out & has another arrest form made out. The first was made out about 10:34 p.m. the 2nd about 10:55 pm.

I had to call a bondsman by the name of Donald Gibbons & he wasn't home so Darryl Klasek came. The bond is $300.00 which I gave him $40.00. Mr. Klasek Looked at the first arrest form and asked the girl at the desk what they meant by "Disturbing the Peace by holloring, she said, the girl that made them out didn't know what she was doing, so it was left that way. He said "I've never heard of it." We had to appear in front of the Magistrate on the morning of the 18th at 9 o'clock & pleaded innocent & he has set up a hearing for the 31st of Oct. at 9 o'clock.

My daughter has been seen by two doctors about the black and blue marks on her arms, armpits, Legs & severe back pains, where Woodbury put his knee in her back & acted brutal to her.

Mr. Cleveland I still can't see how this can be done without my consent of who was supposed to of been arrested, as this was in my own home & private property and the police has no right unless I gave the consent for them to do so. The ex-husband & brother-in-Law was the ones I wanted arrested. After we appeared the next morning, my daughter and I had to have the arrest forms mad on her ex-husband for Assault & battery & tresspassing, and also a tresspassing on the ex-brother in-Law for tresspassing in our home.

Any woman or man has the right to yell in their own home a doctor or a sychiatrist will tell you to do so if you fell like it let it out after my daughter was hit in the stomach, by a man she had a right to yell. So all in all I do believe that all 7 police that was here was in the wrong, and by them I had no right to protect my home. My daughter and I had no weapons. They actually came in and took over without my consent and made a very illegal & brutal arrest to my daughter in her own home and let the wrong ones go. Also by all seven

police officer and four people in a space 13 x 14 it only caused a bigger commotion by this many being here.

I hope this matter is taken care of soon by you, and hope you can see that I am right about it.

Thank you very much,
Bernadine Stark
808 So. 21st Lot # 8
Council Bluffs, Ia 51501

Telephone 323–2579

Mr. Cleveland responded with the following letter:

THE CITY OF COUNCIL BLUFFS, IOWA

From the Office of:
City Council

November 11, 1974

Bernadine Stark
808 South 21st, Lot # 8
Council Bluffs, Iowa 51501

Dear Ms. Stark:

I would like to apologize for not getting back to you sooner.

I have contacted our Public Safety Director, Mr. Jack Chappell, and this matter is currently under investigation. I will have to wait for the results of that investigation before I can give you any answers.

Sincerely,

Ronald E. Cleveland
COUNCILMAN

The question is whether the letter prepared by the women and signed by Bernadine Stark satisfies § 613A.5 in the present case. Substantial compliance with the notice requirement of that section is required. *Vermeer v. Sneller,* 190 N.W.2d 389, 394 (Iowa) ("We have been liberal in not requiring more than substantial compliance with the terms of the notice statute and its predecessor enactments."). The purpose of the notice requirement is to enable a city to investigate an alleged incident while the facts are fresh. *Lunday v. Vogelmann,* 213 N.W.2d 904 (Iowa). That pur-

pose was fulfilled here; Councilman Cleveland's response discloses that the matter was under investigation.

■ Defendants contend however that the letter to the councilman was fatally deficient in several respects. One contention is that the letter does not specify the time, place, and circumstances of the incident. We cannot agree with this contention on the facts. The letter gives the date, states that the happening was in the mobile home the address of which is given, and relates the circumstances in great detail— much more than necessary. The letter also states regarding plaintiff, "Woodbury grabbed her and brutally threw her on the floor & put the handcuffs on her, with his knee in her back holding her down. They had the handcuffs on crooked to where they were cutting her arms. I turned and said 'Please, undo the handcuffs & let her up, as we think she is pregnant.'" Also, "My daughter has been seen by two doctors about the black and blue marks on her arms, armpits, Legs & severe back pains, where Woodbury put his knee in her back & acted brutal to her."

A second contention by defendants is that the compensation or relief demanded is not stated. But § 613A.5 does not require this unless the city demands it. No demand was made.

A third contention by defendants is that the letter does not sufficiently identify Sylvia Cook as a plaintiff claiming damages. At this point we note that notices of this kind to municipalities may not necessarily be drafted by attorneys; they may, as here, be written by the offended individuals themselves, and nothing in the statute prohibits the offended individuals from writing and giving the notices. We can hardly demand from laymen the legal precision required of, say, conveyancers. A fair reading of this letter, composed and written by two women obviously untrained in law, indicates in substance they claimed they were wronged by the police in entering in a large number, in taking over without Bernadine Stark's consent, and in arresting Sylvia Cook unlawfully and brutally. We think a municipality upon receipt of such a communication would at once see potential lawsuits by the women, and would investigate.

In connection with this contention defendants rely on *Goodwin v. City of Bloomfield*, 203 N.W.2d 582 (Iowa), and *Rush v. Sioux City*, 240 N.W.2d 431 (Iowa). The facts here, however, are considerably different from those cases. The brief letter from an insurance adjuster in Goodwin bears little resemblance to the descriptive letter here. Moreover, after the Goodwin decision the legislature amended § 613A.5 by adding the following words which we have italicized: "Failure to state *time or place or circumstance or* the amount of compensation or other relief demanded shall not invalidate the notice . . . ." 65 G.A. ch. 1263, § 5. Rush involved a routine accident report by a policeman. An analogy here would be if Officer Woodbury had returned to the station and made his report, and plaintiff now relied on that report as notice under § 613A.5.

Another contention of defendants is that the letter avails plaintiff nothing because Bernadine Stark, not plaintiff, signed the letter. Section 613A.5 contains no requirement that the plaintiff sign the letter. The statutory language is "said person shall *cause to be presented*". (Italics added.) Contrast rule 49(c), R.C.P. ("The original notice shall be *signed by the clerk*"—italics added). We think both plaintiff and her mother caused the letter to be presented. They prepared it together and indeed plaintiff actually did the writing, and they described therein the alleged indignities and maltreatment each of them sustained.

Next defendants contend the letter was not presented to the city's governing body. This contention cannot stand against the rationale we adopted in *Vermeer v. Sneller*, supra, 190 N.W.2d 389, 393 (Iowa):

· The general rule is that the principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends. . . . It will not be

assumed the agent failed to inform his principal of the notice presented.

Section 613A.5 does not provide that a notice be served in a particular way or be mailed or handed to a specified person. Under the statute the individual shall cause written notice to be presented to the governing body. To the ordinary layman, very likely an elected councilman is a person who represents the city. We think it quite natural and proper for a layman, or his attorney for that matter, to notify a councilman, in the expectation that the councilman will carry the matter forward from there. Such a course of action is well calculated to bring the matter to the city's attention for investigation. That is the object of the notice statute and is exactly what happened here. *Mihalovich v. Appanoose County,* 217 N.W.2d 564 (Iowa); *Blackmore v. City of Council Bluffs,* 189 Iowa 157, 176 N.W. 369; *Klingman v. Madison County,* 161 Iowa 422, 143 N.W. 426; *Perry v. Clarke County,* 120 Iowa 96, 94 N.W. 454; *Kummer v. Bonarek,* 351 F.Supp. 141 (N.D.Ill.); *Seifert v. City of Minneapolis,* 298 Minn. 35, 213 N.W.2d 605; *Peterson v. City of New York,* 73 Misc.2d 618, 341 N.Y.S.2d 834; *Ware v. Manhattan & Bronx Surface Transit Operating Authority,* 49 Misc.2d 704, 268 N.Y.S.2d 519; *Dennis v. City of Albemarle,* 242 N.C. 263, 87 S.E.2d 561; *Farr v. City of Rocky Mount,* 10 N.C.App. 128, 177 S.E.2d 763; *Penny v. City of Texarkana,* 400 S.W.2d 797 (Tex.Civ.App.); Anno. 23 A.L.R.2d 969; 63 C.J.S. Municipal Corporations § 926 at 371.

Finally, defendants contend the letter was not a notice of claim but rather a report of police misconduct. We have already dealt with the city's similar contention that the letter does not identify plaintiff as a claimant seeking damages. As we there stated, the detailed letter certainly would alert a municipality receiving it of the potentiality of lawsuits by the women— enough to cause the municipality to investigate as it actually did. The statute contains no requirement that the notice state the person is presenting a claim. Rather it must state "the time, place, and circumstances [of the wrongful death, loss or injury] and the amount of compensation or other relief demanded." A notice is not even defective for failure to state the time or place or circumstances or the amount or other relief demanded if such information is furnished within 15 days of demand—leaving only the statement of the wrongful death, loss, or injury and the identity of the damaged party or parties as essential to the notice originally. Cf. *Savory v. City of Haverhill,* 132 Mass. 324 ("It is further objected that the notice does not allege that the stone was a defect, nor that the party giving it intended to claim damages; but neither of these allegations is required by statute."). The letter sufficiently informed the city of the claimed loss or injury and of the identity of the women, and it alerted the city to potential claims by them.

We conclude that the letter satisfied § 613A.5 and that the trial court should have overruled the motion for summary judgment.

REVERSED.

MOORE, C. J., and LeGRAND, REYNOLDSON, HARRIS and McCORMICK, JJ., concur in Division I; and MASON, RAWLINGS and REES, JJ., dissent from Division I.

MASON, REYNOLDSON, HARRIS, and McCORMICK, JJ., concur in Division II and the result, and REES, J., MOORE, C. J., and RAWLINGS and LeGRAND, JJ., dissent from Division II and the result.

MASON, Justice (dissenting in part and concurring in part).

I. Being unable to agree with the result reached in Division I, I dissent from that Division.

II. In light of the majority's determination of the jurisdictional question in Division I, I acknowledge the case is before us for review and concur in Division II and the result reached.

RAWLINGS, Justice (dissenting).

In addition to joining the dissents by MASON and REES, JJ., I would further hold that in any event, mere sending of the

letter directed to an individual councilman personally did not suffice to give requisite claim notice to defendant municipality.

I, too, would affirm.

REES, Justice (dissenting).

I respectfully dissent from Division II and the result.

I cannot agree with the conclusions of the majority that the letter, treated by the majority as a notice of claim, satisfies the requirements of § 613A.5, The Code. I agree with defendant's contention that the letter was no more, and no less, than a complaint of police misconduct. I find nothing in the letter to indicate Mrs. Cook was claiming, or expecting redress for any claimed injury by way of monetary payment. Nor is there anything in the letter which could or should have alerted the municipal authorities to the fact plaintiff was claiming compensation; or in any manner suggesting the defendant city could be expected to require plaintiff to "furnish full information" as to the "amount of compensation or other relief demanded."

Section 613A.5, The Code, defines the minimal essentials of the notice of claim as to form and context. We have refused to extend the true impact and literal meaning of § 613A.5, and have held the notice, with all of the statutorily prescribed minimal content, is specifically a requirement of the statute, and condition precedent to the maintenance of suit. *American States Insurance Co. v. City of Dubuque,* 186 N.W.2d 601, 604 (Iowa 1971).

I would accordingly affirm the trial court.

MOORE, C. J., and RAWLINGS and Le-GRAND, JJ., join in this dissent.