# In the Iowa Supreme Court

No. 23–1356

Submitted October 9, 2024—Filed November 22, 2024

## Merle D. Brendeland, Janis Brendeland, Megan Russell, and Joseph Russell,

Appellants,

vs.

## Iowa Department of Transportation,

Appellee.

Appeal from the Iowa District Court for Story County, Jennifer A. Miller, judge.

Landowners appeal a district court order dismissing as untimely a challenge to the Iowa Department of Transportation's exercise of eminent domain authority. **Affirmed.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman and McDermott, JJ., joined. Oxley, J., filed a dissenting opinion, in which McDonald and May, JJ., joined.

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellants.

Brenna Bird, Attorney General, and Shean D. Fletchall and Robin G. Formaker (deceased), Assistant Attorneys General, for appellee.

**Mansfield, Justice.**

### I. Introduction.

"Defer no time, delays have dangerous ends." William Shakespeare, *Henry VI* act 3, sc. 2, l. 33. Delays in a legal action may indeed have perilous consequences. This appeal centers on two delays.

Several individuals owned a tract of land abutting an east–west highway near that highway's intersection with Interstate 35. When the Iowa Department of Transportation (DOT) announced plans to modernize the interchange between the highway and I-35, these landowners saw a development opportunity. Based on a prior discussion with the DOT, they anticipated that when the DOT condemned a strip of their land along the highway, they would be able to install a commercial entrance to the highway. On January 29, 2023, the DOT formally served the landowners with a notice that indicated the DOT would be taking "[a]ll rights of direct access" between their property and Highway 210. Then, on February 21, a DOT employee verbally told one of the landowners that commercial access from their property to the highway would not be allowed. On March 20 and May 2, the landowners filed actions in the district court challenging the condemnation.

The district court dismissed the landowners' actions as untimely given the thirty-day deadline for bringing "an action challenging the exercise of eminent domain authority or the condemnation proceedings" set forth in Iowa Code section 6A.24(1) (2023). This in turn triggered another deadline, the thirty-day deadline in Iowa Rule of Appellate Procedure 6.101(1)(*b*) (2023) for the landowners to file a notice of appeal. But the landowners did not file their notice of appeal in district court until fifty-seven days after the dismissal order, even

though they filed it in our court twenty-two days after the court's dismissal order, and it was immediately served on the DOT.

The landowners ask to be excused from both delays—their delay in filing their notice of appeal in district court and their prior delay in filing their actions in district court. We conclude that the notice of appeal delay is not fatal. Rule 6.101(4) tolls the time for filing a notice of appeal in district court when the notice is served on time, "provided the notice is filed with the district court clerk within a reasonable time." Iowa R. App. P. 6.101(4). We find that the thirty-five days from service to actual filing is, just barely, a reasonable time.

But the other delay is fatal. Iowa Code section 6A.24(1) brooks no exceptions. An action challenging the condemnation or the condemnation proceedings "shall be commenced within thirty days after service of notice of assessment." Iowa Code § 6A.24(1). This statute—employing the mandatory term "shall"—ensures prompt resolution of all condemnation-related disputes other than the amount of money to be paid. In that way, it helps enable public projects like the upgraded highway interchange in this case to move forward expeditiously. Because the landowners missed their thirty-day deadline for mounting a district court challenge, we affirm the district court's dismissal of their case.

**II. Facts and Procedural History.**

**A. The DOT's Notice of Condemnation.** Merle Brendeland, Janis Brendeland, Megan Russell, and Joseph Russell ("the landowners") own farmland in Huxley that borders the south side of Highway 210 just west of its intersection with I-35. On the north side of that portion of Highway 210, a business—Bayer CropScience—has a commercial entrance onto the highway.

Also, just east of I-235, a business located north and a business located south of Highway 210 each have commercial access to that highway.

The DOT planned to reconstruct and modernize the interchange serving Highway 210 and I-35. Merle Brendeland and the co-owners understood that the DOT wanted to condemn a strip of their land along the south side of the highway, in effect broadening the Highway 210 right of way as it approached the southbound entrance ramp for I-35. Based on a May 2022 conversation between Brendeland and Brian Whaley of the DOT, they also believed that they would be able to install a north–south commercial access road to the highway. This access road would intersect with Highway 210 from the south at the same point that the existing Bayer CropScience access road intersected with the highway from the north. Brendeland had been in negotiation with a chain of convenience stores and gas stations about developing a commercial rest stop to serve travelers on I-35 and Highway 210. The rest stop would be located on the landowners' land and would utilize this planned access road.

On January 29, 2023, the DOT served Brendeland and the co-owners with a notice of condemnation of the strip of land. The notice specifically stated that the DOT would be taking "[a]ll rights of direct access between Primary Road No. IA 210 and condemnees' remaining property abutting thereon." The notice also identified the compensation commissioners and stated that they would be meeting on March 21 at 9 a.m. at the sheriff's office in Nevada, would view the landowners' property at approximately 10 a.m., and would return to the sheriff's office to proceed to appraise damages. *See* Iowa Code §§ 6B.8, .9.

Twenty-three days later, on February 21, Brendeland happened to be speaking with Whaley. Whaley told him that the landowners' parcel would *not* be able to obtain commercial access to Highway 210 following the taking. Two days

later, on February 23, Brendeland emailed the DOT through his legal counsel, expressing "shock" that commercial access would not be available and requesting a meeting.

The DOT responded in writing on March 8. The DOT explained that for safety reasons, it had decided to acquire a full 1,000 feet of access rights on the south side of Highway 210 leading up to the entrance ramp. In addition, the DOT noted the existence of a new administrative rule imposing minimum spacing requirements on access roads to highways effective November 2022. According to the DOT, this new rule did not permit the commercial access requested by the landowners.

Specifically, the new rule provided, "Access types A, B and C may be permitted where the applicant can prove necessity and the access has a minimum spacing distance of 600 feet from other connections." Iowa Admin. Code r. 761—112.5(3)(*c*).[1] Going west from I-35, Highway 210 already had multiple connections—including an existing residential access to the landowners' property. Thus, there would be no way to add the landowners' proposed commercial access to Highway 210 given the 600-foot minimum spacing requirements.

The DOT encouraged the landowners to consider using the nearest north–south county road for access to their planned development. That road intersects Highway 210 about a half-mile west of I-35 and also abuts the landowners' property.

---

[1] "[T]ypes A, B, and C" refer to different traffic volumes on the access road. Iowa Admin. Code r. 761—112.5(2)(*a*)–(*c*). There is no dispute that the access road desired by the landowners fell within either type A, type B, or type C, and not within type D, which would be for a farm field entrance. *See id.* r. 761–112.5(2)(*a*)–(*d*).

**B. The Landowners' Claims Challenging the DOT's Condemnation.**

Brendeland and the co-owners decided to contest the DOT's position on several fronts. First, Brendeland filed an application for a temporary injunction in the Story County District Court, seeking to stay the hearing on March 21 at which the compensation commissioners were to determine damages for the taking. *See* Iowa Code § 6B.4. Following an evidentiary hearing, the district court denied relief. That case is not a part of this appeal.

Additionally, on March 20, the landowners initiated two other proceedings. They filed a petition for declaratory order with the DOT. *See id.* § 17A.9. There, they sought a declaratory order that the DOT was *compelled* to provide them with commercial access to Highway 210.

That same day, the landowners also brought an action in the Story County District Court to block the condemnation. Therein the landowners asserted various legal claims, based in large part on an allegation that the DOT was violating condemnation law by acquiring property rights in excess of the minimum required for its project.

The next day, March 21, the compensation commissioners met as previously scheduled. They awarded the landowners damages of $127,345, the precise amount calculated by the DOT's appraiser.[2]

On April 13, the DOT denied the landowners' request for a declaratory order in the administrative proceeding. As before, the DOT explained that the landowners' requested commercial access conflicted with the administrative rule it had adopted the previous November. Further, the DOT pointed out that the commercial access desired by the landowners was inconsistent with the "[a]ll

---

[2]The landowners did not have an appraiser of their own. The landowners filed a separate petition for appeal of that award, which is not part of this appeal. *See* Iowa Code §§ 6B.18, .21, .22.

rights of direct access" acquired by DOT in the condemnation proceeding. A few weeks later, the landowners filed a petition for judicial review of this ruling in the Story County District Court. *See id.* § 17A.19.

By agreement of both parties, the action to block the condemnation and the petition for judicial review were consolidated by the district court.

**C. The DOT's Motion to Dismiss.** The DOT filed a motion to dismiss the consolidated action, arguing principally that it was barred by Iowa Code section 6A.24(1). That section provides that an "action challenging the exercise of eminent domain . . . shall be commenced within thirty days after service of notice of assessment pursuant to section 6B.8." Iowa Code § 6A.24(1). The DOT maintained that section 6A.24 is the exclusive vehicle for challenging exercises of eminent domain, and because the March 20 challenge came fifty days after the landowners were served with the January 29 notice pursuant to section 6B.8, it was too late.

The landowners resisted. They argued that section 6A.24(1) did not apply to all types of actions in which a landowner sought to attack a condemnation and that, in any event, a discovery rule governed because the landowners could not have reasonably discovered until March 8 that the DOT would not be allowing them to have commercial access to Highway 210.

Following a hearing at which the attorneys for both sides presented nearly two hours of argument, the district court granted the DOT's motion to dismiss. It first found that the discovery rule did not apply because "the facts surrounding the taking of land by the DOT were not inherently unknown and unknowable." The court noted that the January 29 notice indicated that the taking included all rights of access to Highway 210. In any event, the court reasoned that "applying the discovery rule to this case would conflict with the plain language

of Iowa Code Section 6A.24(1) which expressly provides that the date of service of the Notice starts the time clock."

The court also rejected the landowners' argument that section 6A.24 doesn't cover all condemnation challenges. It concluded that section 6A.24(1) supplies the only method for landowners to challenge exercise of eminent domain.

**D. The Landowners' Appeal.** The district court's dismissal order was filed August 1. Twenty-two days later, on August 23, the landowners filed a notice of appeal from the order of dismissal.

The notice of appeal contained the district court case captions and case numbers for both consolidated cases. It was addressed to the clerk of the Story County District Court, the clerk of the Iowa Supreme Court, and both of the DOT's counsel. It recited, "Original E-filed with the Clerk of District Court for Story County." It further recited, "And E-filed with the Clerk of Supreme Court of Iowa." Accompanying the notice was a certificate of service reflecting August 23 service on the clerks of both courts and both counsel for the DOT.

However, by mistake, the landowners' counsel neglected to actually file the notice with the district court, although it was filed that day with the supreme court and served on the DOT's counsel.

On September 18, an administrative assistant to the landowners' counsel phoned the clerk of our court, inquiring as to why their office had not seen a notice of briefing deadlines. The clerk responded that one would be forthcoming soon. However, on September 27, our court issued a single-justice order as follows:

> This matter comes before the court on its own motion. Plaintiffs filed a notice of appeal with this court on August 23, 2023, from a district court order entered August 1, 2023. It appears no notice of appeal was filed in district court as required by appellate

rule 6.102(2). An untimely appeal deprives this court of jurisdiction to consider the appeal.

> Within 14 days of the filing of this order plaintiffs shall file a statement addressing this court's jurisdiction over the appeal. The State shall file any response within 14 days of the filing of plaintiffs' statement. The matter will then be considered by the court.

This prompted the landowners to immediately file a notice of appeal that day with the district court. The landowners also filed a statement with our court, explaining that they had taken all other steps in a timely fashion to perfect the appeal, including ordering and paying for the transcript of the hearing on the motion to dismiss.[3] The landowners advised that failing to file the notice in the district court had been "inadvertent and unintentional." They asked that the appeal be deemed timely under Iowa Rule of Appellate Procedure 6.101(4). That rule tolls the deadline for filing the notice of appeal in the district court from the date "when the notice is served, provided the notice is filed with the district court clerk within a reasonable time." Iowa R. App. P. 6.101(4).

The DOT countered with a filing urging that the appeal be dismissed because the delay in filing the notice of appeal had not been "reasonable." We ordered the matter submitted with the appeal and retained the appeal.

**III. Standard of Review.**

"We review district court rulings on motions to dismiss for corrections of error at law." *Puente v. Civ. Serv. Comm'n*, 7 N.W.3d 15, 19 (Iowa 2024). "We also review issues involving statutory construction for corrections of errors at law." *Johnson Propane, Heating & Cooling, Inc. v. Iowa Dep't of Transp.*, 891 N.W.2d 220, 224 (Iowa 2017).

---

[3]The record also reflects timely payment of the filing fee for the appeal and timely filing of the combined certificate.

### IV. Legal Analysis.

**A. Timeliness of This Appeal.** We first consider the threshold issue of this court's jurisdiction. "The rules governing the 'time for appeal are mandatory and jurisdictional.' " *Concerned Citizens of Se. Polk Sch. Dist. v. City Dev. Bd.*, 872 N.W.2d 399, 402 (Iowa 2015) (quoting *Root v. Toney*, 841 N.W.2d 83, 87 (Iowa 2013)). "Failure to file a timely notice of appeal leaves us without subject matter jurisdiction to hear the appeal." *Evenson v. Winnebago Indus., Inc.*, 922 N.W.2d 335, 337 (Iowa 2019).

Iowa Rule of Appellate Procedure 6.101(1)(*b*) provides that "[a] notice of appeal must be filed within 30 days after the filing of the final order or judgment." This strict thirty-day requirement is somewhat tempered by rule 6.101(4), which tolls the time for filing a notice of appeal "when the notice is served, provided the notice is filed with the district court clerk within a reasonable time." This tolling allows "some flexibility." *Cook v. City of Council Bluffs*, 264 N.W.2d 784, 787 (Iowa 1978) (en banc).

Following the district court's entry of final judgment on August 1, the landowners filed their notice of appeal on August 23 with the clerk of our court and served a copy on counsel for the DOT. By mistake, they did not file the notice of appeal with the district court. When made aware of their error, the landowners immediately filed their notice of appeal with the district court clerk. However, by then it was September 27, thirty-five days after the notice of appeal had been served. The question before us is whether filing the notice of appeal to the district court occurred "within a reasonable time" as described in rule 6.101(4).

We have previously established some time parameters. In *Evenson v. Winnebago Industries, Inc.*, we held that 144 days from service to filing of the notice of appeal was too long and dismissed the appeal. 922 N.W.2d at 337. In

*Cook v. City of Council Bluffs*, we indicated that a twenty-six-day lag between service and filing was "near the line" but acceptable. *Cook*, 264 N.W.2d at 787. In *Thayer v. State*, we explained that "thirty-two days was a reasonable time to file the notice of appeal after service on the parties." 653 N.W.2d 595, 599 (Iowa 2002). However, in *Gordon v. Wright County Board of Supervisors*, we held that even though the opposing party had suffered no prejudice from the delay, sixty-three days was "obviously" not reasonable. 320 N.W.2d 565, 567 (Iowa 1982). In all four cases, when appellants became aware of the problem, they promptly sent notices to the district court clerks. *Evenson*, 922 N.W.2d at 336; *Thayer*, 653 N.W.2d at 598; *Gordon*, 320 N.W.2d at 566; *Cook*, 264 N.W.2d at 787.

Timewise, then, this case straddles *Cook* and *Thayer*, where we deemed the appeals timely, and *Gordon* and *Evenson*, where we deemed them untimely. Two other points should be noted about *Cook* and *Thayer*. In *Cook*, the notice of appeal was actually filed with the district court fifty-four days after the entry of judgment, *see* 264 N.W.2d at 787; in *Thayer*, it was filed sixty-three days afterward, *see* 653 N.W.2d at 598. Here, the notice of appeal arrived in district court fifty-seven days after the entry of judgment. The time that elapsed from judgment to filing of the notice of appeal was more than in *Cook* but less than in *Thayer*.

Another point worth noting is that in *Cook* and *Thayer*, notices of appeal were originally mailed in a timely fashion, but for some reason they didn't arrive. *Thayer*, 653 N.W.2d at 599; *Cook*, 264 N.W.2d at 787. Here, because we now inhabit a world of electronic filing, there was no mailing that didn't arrive. Instead, according to the landowners' counsel, his administrative assistant for some reason failed to make the required electronic submission of the notice of

appeal to the district court. Seizing on this distinction, the DOT urges that the delay here was not reasonable.

We disagree. First, rule 6.101(4) speaks in terms of "reasonable time." Iowa R. App. P. 6.101(4). This indicates that the primary focus should be on the period of time involved. Indeed, our most recent decision, *Evenson v. Winnebago Industries, Inc.*, embraced a purely time-based approach. *See* 922 N.W.2d at 337 (comparing the time period in that case to the time periods in *Cook* and *Thayer*). Under a time-based approach, the delay here was reasonable.

Second, even in the earlier cases of *Cook* and *Thayer*, we quoted the following definition of "reasonable time": "such time as is necessary, under the circumstances, for a reasonably prudent and diligent man to do conveniently what the contract or duty requires should be done, having regard for the rights, and possibly the loss if any to the other party." *Thayer*, 653 N.W.2d at 599; *Cook*, 264 N.W.2d at 787. Applying that definition here leads to the same outcome. We cannot say that counsel in *any* of the three cases—*Cook* or *Thayer* or the present case—acted prudently. Experienced practitioners will remember that in the pre-efiling days of paper, when an attorney mailed a notice of appeal to a court in another part of the state, it was customary to include a stamped, self-addressed envelope so a file-stamped copy could be returned, thereby confirming that the filing had actually occurred. Apparently, counsel for the appellants overlooked that step in *Cook* and *Thayer*. But importantly, as we emphasized in *Thayer*, there is no "loss" when the appellee and our court are notified of the appeal immediately. *See* 653 N.W.2d at 599 ("Because both the University and the Supreme Court clerk received notice of the appeal in a timely fashion, we find no unfairness to the University."). That's what happened in *Thayer*, and that's what happened here.

Also, we specifically stated in *Evenson* that the emergence of electronic filing does not affect our deadlines:

> Our Iowa Rules of Electronic Procedure do not affect our deadlines contained in our rules. These rules provide in relevant part, "The availability of electronic filing, however, does not affect deadlines or the provisions for extension of deadlines in the Iowa Code or Iowa Court Rules."

922 N.W.2d at 336 (quoting Iowa R. Elec. P. 16.309(1)(*a*)). Logically, that includes the "reasonable time" deadline in rule 6.101(4).

In sum, we believe that this case is fundamentally similar to *Cook* and *Thayer*. As in those cases, the attorney initially did what they were supposed to do to effectuate a timely filing of a notice of appeal. Here, the notice of appeal prepared by the attorney made it abundantly clear that it had to be filed with the district court. No administrative assistant looking at the notice of appeal could conclude otherwise. As in *Cook* and *Thayer*, the attorney acted improvidently and didn't do the proper follow up. And as in *Thayer* (the situation is less clear in *Cook*), the courts rescued the attorney by inquiring as to the missing filed notice of appeal.

We thus conclude that the thirty-five days involved here—like the twenty-six in *Cook* and the thirty-two in *Thayer*—didn't cross the line. We said that twenty-six was "close" in *Cook*, but we didn't repeat that comment in *Thayer*. As in *Cook* and *Thayer*, counsel here could and should have acted more prudently. Still, counsel was quite diligent in pursuing the appeal—even going so far as to call about the status of the briefing schedule. There was no prejudice whatsoever to the other side. We therefore find that the notice of appeal was filed with the clerk of the district court within a reasonable time after timely service, although only barely.

**B. Timeliness of the Actions Filed Below.** The landowners challenge the DOT's exercise of eminent domain on an "excessive taking" theory. Iowa law requires a showing by the condemnor of "the minimum amount of land necessary to achieve the public purpose." Iowa Code § 6B.3(1)(*g*).

> Any land to be acquired by condemnation beyond the necessary minimum to complete the project shall be presumed not to be necessary for a public use or public purpose unless the applicant can show that a substantial need exists for the additional property to achieve the public use or public purpose.

*Id.*; *see also id.* § 6A.1 (limiting takings to what "may be necessary for any public improvement"). Here, the landowners contend that it was unnecessary and illegal for the DOT to condemn all access rights along the south side of Highway 210, thereby preventing them from getting commercial access to the highway.

The district court, however, found that the landowners' legal challenge was untimely. Section 6A.24 imposes a thirty-day deadline and states,

> 1. An owner of property described in an application for condemnation may bring an action challenging the exercise of eminent domain authority or the condemnation proceedings. Such action shall be commenced within thirty days after service of notice of assessment pursuant to section 6B.8 by the filing of a petition in district court.

*Id.* § 6A.24(1). It is undisputed that the landowners were served with the DOT's notice of assessment on January 29 and did not initiate the present actions until March 20, fifty days later.

The landowners maintain that they have brought "common law" claims in injunction, mandamus, or certiorari that are not subject to Iowa Code section 6A.24. *See Thompson v. City of Osage*, 421 N.W.2d 529, 531 (Iowa 1988) ("A condemnee may test the initiating action of the condemnor by injunctive action, mandamus, and certiorari."). Therefore, they contend, they may rely on timeliness caselaw that predates the 2006 enactment of section 6A.24. *See id.* at

531–32 (determining that the thirty-day period for bringing a certiorari action did not start until the assessment became final). This contention requires us to examine the text of section 6A.24.

"When interpreting the meaning of a statute, we start with the statute's text. If statutory language in its proper context is unambiguous, we do not look past the plain meaning of the words." *Hummel v. Smith*, 999 N.W.2d 301, 305 (Iowa 2023) (quoting *Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 904 (Iowa 2021)). Here we need not go beyond the plain and unambiguous text of the statute.

The statute covers "action[s] challenging the exercise of eminent domain authority or the condemnation proceedings." Iowa Code § 6A.24. Such claims "shall" be brought within thirty days after service of assessment. *Id.* The landowners' claims fall squarely within the scope of this statute of limitations. In their own words, they "challenge the validity of the condemnation of a portion of Petitioners' land in Story County, Iowa on the basis that it is an excessive taking." They allege the taking was excessive because the DOT took more property rights than necessary to achieve its public purpose. So, the landowners are bound by the thirty-day time limit in section 6A.24(1).

The landowners argue that section 6A.24 is merely an additional arrow in the property owner's quiver; the property owner always has the option of pursuing a common law challenge to the condemnation without going through that section. In the landowners' view, the property owner only has to comply with section 6A.24 if they want to recover attorney fees. *See* Iowa Code § 6A.24(3) ("If a property owner . . . prevails in an action brought under this section, the acquiring agency shall be required to pay the costs, including reasonable attorney fees, of the adverse party."). There are several answers to this argument.

In the first place, that isn't what the statute says. Section 6A.24 applies to "an action challenging the exercise of eminent domain authority or the condemnation proceedings"—not to *some* of those actions. *Id.* § 6A.24(1). In addition, section 6A.24 is titled "Judicial review of eminent domain authority." *Id.* § 6A.24. That title indicates that section 6A.24 covers *the subject* of judicial review, not merely *one type* of judicial review. The general assembly enacted the title as part of the legislation in 2006, *see* 2006 Iowa Acts 1st Extraordinary Sess. ch. 1001 § 5, and it may be considered in interpreting the statutory text. *See State v. Hall*, 969 N.W.2d 299, 307 (Iowa 2022) ("Although the title of a statute cannot change the plain meaning of the statutory text, it can be considered in interpreting the text.").

Furthermore, Iowa Code section 6B.1A contains express exclusivity language that controls here. That section provides, "The procedure for the condemnation of private property for works of internal improvement, and for other public projects, uses, or purposes, unless and except as otherwise provided by law, shall be in accordance with the provisions of this chapter." Iowa Code § 6B.1A. Just a few sections later, section 6B.3A, titled "Challenge by owner," cross-references section 6A.24 and states,

> An owner of property described in an application for condemnation may bring an action to challenge the exercise of eminent domain authority or the condemnation proceedings in the district court of the county in which the private property is situated as provided in section 6A.24.

*Id.* § 6B.3A. In other words, section 6B.1A makes section 6B.3A the exclusive vehicle for challenging the exercise of eminent domain authority or the condemnation proceedings. The latter, in turn, makes section 6A.24 the exclusive vehicle for doing so.

Also, to the extent the landowners are lamenting that section 6A.24 impairs their prior common law rights by imposing a tighter deadline for challenging condemnations, they run into section 4.2, which states,

> The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice.

*Id.* § 4.2. There are good policy reasons why the legislature might want a tight deadline. It makes sense to resolve challenges to the condemnation itself before assessing damages and turning the property over to the condemnor. Moreover, the approach advocated by the landowners, allowing a property owner to bring a potpourri of "common law" claims subject to the old deadline and "section 6A.24" claims subject to the new deadline, makes the least sense of all.

Our recent decision in *Johnson Propane, Heating & Cooling, Inc. v. Iowa Department of Transportation*, 891 N.W.2d 220, is on point. There, the landowner complained that the DOT should have taken all of its property for a highway project instead of just a portion because the taking left the landowner with an uneconomical remnant. *Id.* at 222. But the landowner waited until the compensation commission had determined damages before going to court. *Id.* We held that the landowner's action was untimely:

> The issue as to whether a taking leaves an uneconomical remnant is a challenge to the acquiring agency's authority to exercise its power of eminent domain. Section 6A.24(1) requires that a challenge to the acquiring authority's exercise of eminent domain must be brought by a separate action by filing an action in district court.
>
> . . . Section 6A.24(1) requires a party to file an action within thirty days from the notice of assessment. Johnson Propane failed to file such an action. Failure to file an action in a timely manner deprives a court of authority to hear a particular case.

*Id.* at 225. In other words, we explained that section 6A.24(1) is the only way for a property owner to challenge "the acquiring agency's authority to exercise its power of eminent domain." *Id.* And if an effort to require the DOT to condemn *more* than it wants has to be brought under section 6A.24(1), it logically follows that an effort to require the DOT to condemn *less* than it wants also must be brought under section 6A.24(1). Both are challenges to "the exercise of eminent domain authority or the condemnation proceedings." Iowa Code § 6A.24(1).

The landowners try to distinguish *Johnson Propane* on the ground that the "uneconomical remnant" claim wasn't available at common law. This strikes us as a non sequitur. By 2006, Iowa's condemnation *laws* obligated the condemning authority both to condemn only the "minimum amount of land necessary to achieve the public purpose" and to condemn "an uneconomical remnant." Iowa Code §§ 6B.3(1)(*g*), .54(8) (2005). Both were statutory claims. So, if section 6A.24 as enacted in 2006 applies to one, it should rightfully apply to the other.

For all these reasons, we reject the landowners' argument that they were not subject to the thirty-day deadline in section 6A.24(1) and affirm the district court on this point.

Alternatively, the landowners argue that under a discovery rule, the statute of limitations should be tolled to March 8, 2023, the date when they received the DOT email confirming they would not be allowed commercial access to Highway 210. The discovery rule is an equitable doctrine that allows plaintiffs to toll statutes of limitations when "failure to bring a timely action arises from the plaintiff's lack of knowledge about key facts that are unknown to the plaintiff and cannot reasonably be discovered by the plaintiff even in the exercise of due diligence." *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 566–67 (Iowa 2018). We apply the discovery rule when it would be unfair to charge a

plaintiff with knowledge of facts which were unknown and inherently unknowable. *Id.* at 567.

We agree with both facets of the district court's ruling here. In the first place, the January 29 notice indicated that the DOT was taking "[a]ll rights of direct access between Primary Road No. IA 210 and condemnees' remaining property abutting thereon." In other words, there could be no new access. Thus, the key facts were far from unknowable to the landowners.

Moreover, the discovery rule doesn't apply when a statute of limitations contains a specific triggering event. *See MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 884 (Iowa 2020) ("We have refused to apply a discovery rule to other statutes of limitation that set forth the triggering event."). In *MidWestOne Bank v. Heartland Co-op*, for example, we refused to apply the discovery rule where the date of sale started the time clock in the statute. *Id.* at 884–85. In this case, Iowa Code section 6A.24(1) (2023) provides for a specific triggering event—namely, the date of service of the notice of assessment—so no discovery rule is available.

**V. Conclusion.**

For the foregoing reasons, we affirm the district court's order dismissing this consolidated proceeding.

**Affirmed.**

Christensen, C.J., and Waterman and McDermott, JJ., join this opinion. Oxley, J., files a dissenting opinion, in which McDonald and May, JJ., join.

**Oxley, Justice (dissenting).**

We have never before allowed parties to use the tolling-upon-service rule to excuse a late-filed notice of appeal that was the result of their attorney's inadvertence. The majority does so here, excusing the attorney's admitted mistake by blaming the attorney's administrative assistant. But an attorney's assistant's mistake is the attorney's mistake, and failing to submit a document through the court's electronic document management system (EDMS) is analogous to failing to put the notice of appeal in the mail, which is the *opposite* of the "pruden[ce] and diligen[ce]" we have required in every case until today. *Cook v. City of Council Bluffs*, 264 N.W.2d 784, 787 (Iowa 1978) (en banc) (concluding first that an attorney acted as a "reasonably prudent and diligent" person by mailing the notice of appeal to the district court the same day it was served by mail before considering the length of the delay (quoting *Williamson Heater Co. v. Whitmer*, 183 N.W. 404, 405 (Iowa 1921)).

The majority has distilled the jurisdictional rule down to "some time parameters." Essentially, our jurisdiction turns on whether our clerk's office alerts a party of a missing district court notice of appeal within some undefined period of time—a period that our court keeps arbitrarily inching out. This is hardly the strict construction owed our jurisdictional rules. *See Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*, 6 N.W.3d 290, 295 (Iowa 2024) ("Because the doctrine of sovereign immunity is . . . jurisdictional in nature, any waiver of sovereign immunity must be 'strictly construed.' " (quoting *Feltes v. State*, 385 N.W.2d 544, 548 (Iowa 1986) (en banc))); *see also Segura v. State*, 889 N.W.2d 215, 224 (Iowa 2017) ("[J]urisdictional matters must be carefully construed."). I respectfully dissent.

I.

"The deadline for filing a notice of appeal [is] mandatory: '[w]here an appellant is late in filing, by as little as one day, we are without jurisdiction to consider the appeal.'" *Jones v. State*, 981 N.W.2d 141, 147 (Iowa 2022) (second alteration in original) (quoting *Root v. Toney*, 841 N.W.2d 83, 87 (Iowa 2013)). Our rules allow service of a notice of appeal to toll the 30-day period for filing that notice with the district court "provided the notice is filed with the district court clerk within a reasonable time." Iowa R. App. P. 6.101(4) (2023). Contrary to the majority's position, whether a party files the notice of appeal within a "reasonable time" after timely service is not measured solely by the number of days that lapse between service of the notice and the actual filing in district court. The reason for the delay also matters,[4] as we made clear by requiring

---

[4]The concept of "reasonable time" arises in a variety of contexts, and courts consistently look to the reason for the delay, not just the length of it. What constitutes a "reasonable time" necessarily depends on there being a reason. In the absence of a reason, the length of a delay may be shorter or longer, but the delay is not reasonable. *See, e.g.*, *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (finding that the district court properly denied a motion to amend the complaint where it was filed ten months after the court entered the scheduling order and seven weeks before the close of discovery where plaintiff failed to provide a reason why punitive damages could not have been alleged earlier); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) ("Contrary to Kagan's belief that all motions filed within one year of the dismissal are timely under Rule 60(*b*)(1), 'the one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a "reasonable time," even though the one-year period has not expired.' . . . 'What constitutes "reasonable time" depends upon the facts of each case, taking into consideration, [*inter alia*,] . . . the reason for delay . . . .'" (first quoting Wright & Miller, Federal Practice and Procedure, Civil § 2866, p. 232; and then quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam))); *Malibu Media, LLC v. Weaver*, No. 8:14–cv–1580–T–33TBM, 2016 WL 473133, at *1–2 (M.D. Fla. Feb. 8, 2016) (overruling objections to an order denying motions to compel brought one day before the discovery deadline because the movant failed to provide a reason or good cause for the delay); *United States v. Colon-Miranda*, 985 F. Supp. 36, 39 (D. P.R. 1997) (explaining that "what constitutes 'a reasonable time' before trial [for purposes of giving notice of intent to seek the death penalty under 18 U.S.C. § 3593] must balance such factors as: The length of time between the notice of intent to seek the death penalty and the trial or plea, the reason for any delay, the nature of the government's conduct, and the prejudice to defendant from delay" and noting that "the First Circuit has specifically stated that it looks unfavorably upon delays which, though unintentional, result from government ambivalence"); *Clarke v. Costine ex rel. Clarke*, 821 A.2d 104, 109 (N.J. Super. Ct. App. Div. 2003) (identifying the "key factors" in considering a laches defense to include "the length of delay" and "reasons for delay" in concluding that "while the delay was unusually long, the judge found ample justification for

that the party act as a "reasonably prudent and diligent" person in filing the notice of appeal. *See Cook*, 264 N.W.2d at 787. In other words, the delay cannot result from something within the filing party's control—as it admittedly did here. This is an important qualifier given the jurisdictional nature of the rule. The tolling-upon-service rule applies only to save late-filed notices that miss the deadline for reasons beyond the attorney's control.

In *Cook v. City of Council Bluffs*, we defined "reasonable time" for purposes of the predecessor of rule 6.101(4)

> as being "such time as is necessary, under the circumstances, *for a reasonably prudent and diligent man to do conveniently what the contract or duty requires* should be done, having regard for the rights, and possibly the loss if any to the other party affected."

*Id.* (emphasis added) (quoting *Williamson Heater Co. v. Whitmer*, 183 N.W. 404, 405 (Iowa 1921)). In applying this definition to the tolling-upon-service rule, we considered two "additional factors." First, the plaintiff's attorney mailed the notice of appeal to the district court on the same date it was served on the defendant's attorney by mail, "[b]ut the notice mailed to the clerk went awry." *Id.* That is, the failure of the notice to reach the district court clerk was not the appellant's fault. The same was true in subsequent cases, where we found that the time for filing tolled. *See Thayer v. State*, 653 N.W.2d 595, 599 (Iowa 2002) ("Thayer sent notice of appeal in a timely manner to the district court clerk, but, for some reason, the notice did not arrive."); *Budde v. City Dev. Bd.*, 276 N.W.2d 846, 849 (Iowa 1979) (en banc) (noting that "[a]pplication of these criteria [(to act prudently and diligently)] is somewhat hampered by the record"

---

the delay"); *In re K. H. H.*, 466 P.3d 698, 701 (Or. Ct. App. 2020) (examining Oregon Revised Statute section 419B.923(3), which allows a parent to file a motion to set aside an order or judgment terminating rights within a "reasonable time," and explaining that the court may consider "the circumstances surrounding the filing, including the length of the delay and any reasons for it" (quoting *In re A.D.J.*, 168 P.3d 798, 802 (Or. Ct. App. 2007))).

when "[t]here is nothing of record as to how the motion was conveyed from the attorney for respondents in Des Moines to the office of the clerk in Dubuque" but concluding that a seven-day delay was reasonable); *City of Central City v. Knowlton*, 265 N.W.2d 749, 750–51 (Iowa 1978) (concluding that filing was timely where it was served on the thirtieth day after final judgment and filed in district court the next day); *cf. Marco Dev. Corp. v. City of Cedar Falls*, 473 N.W.2d 41, 45 (Iowa 1991) ("Marco served the City ten days after the trial court filed its ruling and, on the same day, mailed to the clerk of court its motion for enlargement. The motion was file stamped by the clerk of court the following day."); *Smart-Way Truckin', Inc. v. Cota Indus., Inc.*, 439 N.W.2d 162, 163–64 (Iowa 1988) (declining to address whether a two-and-a-half month delay was nonetheless timely based on the attorney's affidavit that the notice had been properly mailed to the district court where the attorney took the further step of "caus[ing] the clerk of court to commence an action in rem pursuant to Iowa Code chapter 647, Restoration of Lost Records, requesting the district court to restore the lost, destroyed or misfiled notice of appeal in question" such that "the record . . . show[ed] that the appeal was perfected by a timely filing of the notice of appeal").

It was only after first considering whether the plaintiff did what a "reasonably prudent and diligent" person needed to do to comply with the filing requirement that we then considered the length of time it actually took for the notice to get filed. *See Cook*, 264 N.W.2d at 787. "Then the second factor comes into play, the word 'reasonable.' In promulgating rule 82(*d*), this court did not state that the filing had to be done within a specified number of days after serving." *Id.* Left to determine a "reasonable" time, we said that twenty-six days was "near the line." *Id.* Later, we concluded that sixty-three days "[o]bviously"

was not. *Gordon v. Wright Cnty. Bd. of Supervisors*, 320 N.W.2d 565, 566–67 (Iowa 1982). Even in *Gordon v. Wright County Board of Supervisors*, we only discussed the timing after first recognizing that the plaintiff's counsel had timely mailed the notice of appeal to the district court, but "[t]he district court clerk never received the mailed notice." *Id.*[5] Establishing that the filing party acted diligently and prudently is critical to determining whether the actual filing was completed in a reasonable time for purposes of the tolling rule. Our analysis in *Cook* exemplified this point in summarizing:

> [U]nder the circumstances here the mailing of the notice to the district court clerk *at the same time as the service*, the further mailing to the district court clerk after plaintiff's attorney learned that the first notice could not be found, and the receiving of the notice by the clerk 26 days after the serving we hold that plaintiff accomplished the filing of the notice within a 'reasonable' time after serving.

264 N.W.2d at 787 (emphasis added).

## II.

Here, the landowner's attorney who signed the notice of appeal and its certificate of service "thought and assumed that his secretary had filed" the notice of appeal in both the district court and supreme court on the same day. But counsel admits that the notice was not actually submitted to the district court through its separate EDMS interface; he admits it was his fault, not the fault of some third-party outside his control. It was not until he was notified by the clerk of our court some thirty-five days later that counsel submitted the

---

[5]In *Evenson v. Winnebago Industries, Inc.*, we held that the lengthy delay—144 days—was not within a reasonable time of serving the notice of appeal because "[a] 144-day delay is far beyond the sixty-three-day delay we found unreasonable in *Gordon*." 922 N.W.2d 335, 337 (Iowa 2019). That we went straight to the length of the delay did not jettison the requirement that the attorney act "prudent[ly] and diligent[ly]"; indeed, we first quoted that rule. *See id.* at 336.

notice of appeal to the district court through EDMS on September 27, 2023. Counsel describes the failure as "inadvertent and unintentional."

The requirement for "prudent and diligent" action does not allow for inadvertent failures by counsel. Notably, Iowa Rule of Appellate Procedure 6.101(4) does not provide a "good cause" backstop like some of our other rules. *See, e.g.*, Iowa R. Civ. P. 1.302(5) (allowing a party to seek an extension of time to effect service of an original notice if the party "shows good cause for the failure of service"). Even then, we have said that "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been [deemed] insufficient to show good cause." *Crall v. Davis*, 714 N.W.2d 616, 620 (Iowa 2006) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 542 (Iowa 2002)). If inadvertence is insufficient to support a rule allowing an exception for good cause, it is certainly insufficient to establish that a party acted prudently and diligently as is required to benefit from rule 6.101(4)'s tolling of the time for filing the jurisdictionally required notice of appeal.

Had the landowner's attorney (or his administrative assistant) attempted to submit the notice of appeal to the district court through the proper EDMS filing system, and it was the EDMS system that failed to transmit the notice, that would be analogous to mailing the notice of appeal to the clerk at the same time as serving it—the critical point to our holding in *Cook*. *See* 264 N.W.2d at 787 ("One [factor] is that plaintiff's attorney *did not wait* until May 2, 1977, to mail the notice to the district court clerk; his secretary *mailed it at the same time* she served defendants' attorney by mail on April 8, 1977." (emphasis added)). The majority ignores this critical distinction, hypothesizing instead that the attorneys in both *Cook* and *Thayer v. State* could have (but apparently

did not; how we know that is unclear) sent along a stamped, self-addressed envelope for the clerk to return a copy of the notice, which would have confirmed that the notice was filed. From there, the majority concludes that those attorneys did not act prudently after all. Except we said that they did act prudently in both *Cook* and *Thayer*. *See Thayer*, 653 N.W.2d at 598–99; *Cook*, 264 N.W.2d at 787. Besides relying on hypothetical events entirely outside the record of what happened in those cases to rewrite their holdings, the majority's attempt to equate counsel's conduct here with what happened in *Cook* and *Thayer* simply ignores what we actually said in both cases: that it was the act of mailing the notice at the same time it was served that made the attorneys' actions prudent. *See Thayer*, 653 N.W.2d at 598–99; *Cook*, 264 N.W.2d at 787. The EDMS equivalent of that didn't happen here, as the landowner's attorney candidly admits.

After rewriting *Cook* and *Thayer* to conclude that the attorneys there weren't so prudent after all, the majority recognizes that the delay here was caused by the landowner's attorney's mistake but nonetheless excuses it as the fault of the attorney's administrative assistant. According to the majority, the attorney did everything *he* could, but his *administrative assistant* failed to follow his clear direction. Yet the attorney personally signed the certificate of service certifying that the notice of appeal had been submitted to the district court clerk when it had not. In any event, the assistant is the attorney's agent, and the assistant's mistakes are the attorney's mistakes. *See, e.g.*, *Palmer v. Hofman*, 745 N.W.2d 745, 748 (Iowa Ct. App. 2008) (holding that a paralegal's conduct that resulted in service being delayed well beyond the 90-day requirement did not "constitute good cause excusing the delay of service because counsel was ultimately responsible for the conduct and work product

of his paralegal" and that the paralegal's inaction was "not akin to the uncontrollable, rogue actions of a third party beyond the attorney or party's reach that prevents timely service of process"); *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 595 (Iowa 1997) ("[W]e have a strong negative reaction to a lawyer's attempt to blame professional shortcomings on an employee."); *Comm. on Prof'l Ethics & Conduct v. Postma*, 430 N.W.2d 387, 389 (Iowa 1988) (en banc) (characterizing an attorney's attempt to blame an error on his secretary as a "timeworn excuse" that "judges view with unbounded skepticism, and never with admiration"); *see also Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 698 (8th Cir. 2003) ("[L]awyers cannot escape responsibility for the wrongdoing they supervise by asserting that it was their agents, not themselves, who committed the wrong."). The assistant's inadvertence is accountable as the attorney's, and thus as the party's. The assistant's failure is not—as the majority suggests—the same thing as the third-party postal system failing to deliver a properly mailed document.

## III.

The majority also applies a "no harm, no foul" analysis to excuse compliance with our jurisdictional rules because the parties and the *appellate* court were "notified immediately" of the appeal. There are two problems with this justification. First, notification to the parties is a necessary precursor to a party's use of rule 6.101(4)—a timely service of the notice is what triggers the tolling. So, the appellate court and opposing party are always notified immediately when rule 6.101(4) is invoked, and this justification proves nothing.

Second, it ignores the reason we require notices of appeal to be filed in *district* court. The copy filed in our court is "informational." *See* Iowa R. App. P.

6.101(1)(*b*). The notice of appeal filed in district court is the one that matters because it alerts the district court that it no longer has jurisdiction over the case. *See Iowa State Bank & Tr. Co. v. Michel*, 683 N.W.2d 95, 110 (Iowa 2004) (recognizing that "the filing of a notice of appeal generally deprives the district court of jurisdiction" other than over collateral matters such as awarding attorney fees). Indeed, a party who files a notice of appeal during the pendency of its own posttrial substantive motion prevents the district court from ruling on it. *See Freer v. DAC, Inc.*, 929 N.W.2d 685, 688 (Iowa 2019) ("In filing the notice of appeal, Freer divested the district court of jurisdiction over the posttrial motion."); *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000) ("Additionally, once the appeal is perfected, the district court loses jurisdiction to rule on the motion, and any such ruling has no legal effect."). Filing the notice of appeal in the district court has significance, even if the parties and the appellate courts are "notified immediately" of the appeal.

## IV.

The landowner's attorney admits he inadvertently failed to file the notice of appeal in district court until notified over a month after the notice of appeal had been served. He failed to act with the prudence and diligence required to trigger the tolling rule, *see Cook*, 264 N.W.2d at 787, making the notice of appeal filed in district court untimely. The appeal should be dismissed for lack of jurisdiction.

McDonald and May, JJ., join this dissent.